# Exhibit A

### SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | |
|---|---|
| Michael S. Zuckman<br>704 Reserve Champion Drive<br>Rockville, Maryland 20850<br><br>   Plaintiff,<br>   On behalf of himself and<br>   the General Public of the<br>   District of Columbia<br><br>     v.<br><br>MONSTER BEVERAGE CORP.<br>550 Monica Circle, Suite 201,<br>Corona, California 92880<br><br>   Defendant. | FILED<br>CIVIL ACTIONS BRANCH<br>NOV 1 3 2012<br>Superior Court<br>of the District of Colombia<br>Washington, DC.<br><br>0008655-12<br><br>Civil Action No. _____ |

  Plaintiff, Michael S. Zuckman by his undersigned attorneys, brings this action on behalf of the General Public of the District of Columbia against Monster Beverage Corporation and alleges the following:

### INTRODUCTION

  1. This action is brought by Plaintiff on behalf of himself and the General Public of the District of Columbia pursuant to District of Columbia Code §28-3905(k)(1). Plaintiff Michael S. Zuckman is a Maryland resident whose place of employment is Washington, D.C. He has viewed advertising for, and regularly purchased Monster Energy drinks manufactured by Defendant, in the District of Columbia. Mr. Zuckman has consumed up to two cans of Monster Energy drink in one day on numerous occasions.



1

2.  After learning that Monster Energy drink contains ingredients that can have potentially negative effects when combined and that Monster Energy drink may not be "completely safe" and had been linked to deaths, he stopped purchasing Monster Energy drinks. Plaintiff no longer consumes Monster Energy drinks.

3.  In marketing its signature Monster Energy drink, Defendant Monster Beverage Corp. ("Monster") targets adolescents and teenagers and has stated that it is "completely safe."[1] Monster has failed to disclose the material facts that each 24 oz. Monster Energy drink contains ingredients (including high amounts of caffeine (approximately 240 milligrams), guarana, taurine, and L-carnitine) that, when taken together, can have numerous negative health effects. The D.C. Public was injured by Defendant's misrepresentations.

## JURISDICTION AND VENUE

4.  Jurisdiction of this Court is founded on D.C. Code § 11-921. This Complaint arises under the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq.* and the Court, therefore, has subject matter jurisdiction thereunder.

5.  Venue is proper in this District. The claims asserted in this complaint arise, in part, within this District. Plaintiff works in this District and seeks to represent residents of this District who have purchased Monster Energy drinks from the Defendant. Many of these transactions occurred in retail stores located in this District. Defendant transacts business in this District and has caused injury within this District.

6.  As a result of the facts alleged in this Complaint, this Court has personal jurisdiction over the Defendant. The Defendant sells and markets its products to stores and consumers in the District of Columbia. The Defendant has transacted business in the District of

---

[1] http://www.nlm.nih.gov/medlineplus/news/fullstory_130695.html; http://seekingalpha.com/article/980831-is-monster-beverages-a-falling-knife-or-a-great-buying-opportunity?source=feed

Columbia; caused injury in the District of Columbia via acts or omissions occurring therein; and derived substantial revenue from products sold in the District of Columbia.

## PARTIES

7. Plaintiff, Michael S. Zuckman brings this action on his own behalf and as a private attorney general on behalf of the General Public of the District of Columbia pursuant to District of Columbia Code § 28-3905(k)(1). Michael S. Zuckman resides in Rockville, Maryland. Mr. Zuckman has viewed advertising for, and regularly purchased Monster Energy drinks in the past in the District of Columbia.

8. Defendant is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 550 Monica Circle, Suite 201, Corona, California 92880. At all time pertinent hereto, Defendant was responsible for the design, manufacture, production, sale, marketing, advertising, promotion and distribution of Monster Energy drink.

## THE INTERESTS OF THE GENERAL PUBLIC

9. Defendant Monster marketed its Monster Energy drink misrepresents the health effects of Monster Energy drink by stating that it is "completely safe" when it is sold in cans which can contain up to 240 milligrams of caffeine (a dangerous amount) as well as other ingredients such as guarana, taurine that, taken together, can cause negative health effects.

10. Upon information and belief, Defendant has caused injury and adverse effects to the general public of the District of Columbia.

11. Plaintiff acts for the benefit of the General Public as a Private Attorney General pursuant to District of Columbia Code §28-3905(k)(1).

## FACTUAL BACKGROUND

12. Monster Energy drink was launched in 2002 and, by 2012, Monster Energy drink had an approximate 35 percent share of the $31.9 billion energy drink market based on volume.

13. Each 24 oz. can of Monster Energy drink contains approximately 240 milligrams of caffeine, as well as other stimulants. In addition to caffeine, it also contains guarana, taurine, and l-carnitine, ingredients which have been linked to negative health effects, especially when combined together. A major side effect of l-carnitine is its propensity to cause seizures in people with a history of seizures. Guarana is a plant that contains caffeine, and according to an article published by Michigan State University in June 2010, it may cause toxicity when combined with other forms of caffeine like those found in Monster Energy drinks.[2]

14. In spite of the presence of these ingredients, Monster has stated that "Monster Energy drinks are completely safe, and we stand behind our products. On an ounce per ounce basis, there is more than double the caffeine in the leading brand of brewed coffee than there is in Monster Energy drinks."

15. Unlike coffee, Monster Energy drink is sold in cans of up to 24 ounces.

16. Monster Energy misrepresents that Monster Energy drinks are "completely safe" when, in reality, the combination of high amounts of caffeine, guarana, l-carnitine, and taurine have been linked to negative health effects.

17. In order to attempt to provide promised benefits of increased energy and stamina, weight loss, and enhanced physical and/or mental performance, Monster Energy drink contains and relies primarily upon massive amounts of caffeine, a substance known for imposing adverse

---

[2] http://www.livestrong.com/article/397877-are-monster-energy-drinks-safe/#ixzz2BfR3odqi

4

health effects upon consumers.[3] Caffeine affects various organ systems by, *inter alia*, increasing heart rate, blood pressure, speech rate, motor activity, attentiveness, gastric secretion, diuresis, and body temperature. *Id.* at 1185. Most importantly, caffeine is known to play a role in triggering arrhythmias. *Id.*; *see also* Adam J. Burger and Kevin Alford, *Cardiac Arrest in a Young Man Following Excess Consumption of Caffeinated "Energy Drinks"*, 190 MED J. OF AUS. 41, 43 (2009) [hereinafter, "*Burger and Alford*"] ("The role of caffeine in triggering arrhythmia is well established.").

18. Caffeine can be lethal in doses ranging from 200-400 milligrams. PEDIATRICS at 1185; *Burger and Alford* at 43. Adverse health effects, including arrhythmia, typically manifest with ingestion of higher than 200 milligrams of caffeine. John P. Higgins, *et al.*, *Energy Beverages: Content and Safety*, Mayo Clinic Proc., Nov. 2010 at 1033, 1034 [hereinafter "*Higgins*"]. Such effects can also include insomnia, nervousness, headache, tachycardia, and nausea. *Id.*

19. One 16 oz. can of Monster Energy contains 160 milligrams of caffeine. http://www.energyfiend.com/the-caffeine-database (last visited October 31, 2012). The 24 oz. can of Monster Energy contains 240 milligrams of caffeine. *Id.*

20. Monster Energy drinks also contain guarana and taurine, which can be problematic when combined. Guarana is a plant extract that also contains caffeine. PEDIATRICS at 1186. Guarana may cause toxicity when combined with other forms of caffeine.[4] Taurine has an effect on cardiac muscles similar to that of caffeine. *Burger and Alford* at 43. Studies have

---

[3] *See* Substance Abuse and Mental Health Servs. Admin., Center for Behavioral Health Statistics and Quality, THE DAWN REPORT: EMERGENCY DEPARTMENT VISITS INVOLVING ENERGY DRINKS 2 (Nov. 22, 2011); Committee on Nutrition and the Council on Sports Medicine and Fitness, *Sports Drinks and Energy Drinks for Children and Adolescents: Are they Appropriate?*, 127 PEDIATRICS 1183 (2011) [hereinafter, "PEDIATRICS."].
[4] http://www.livestrong.com/article/397877-are-monster-energy-drinks-safe/#ixzz2BfR3odqi

shown that the synergistic effect of caffeine, guarana, taurine and/or other like substances can produce significant adverse health effects, including cardiac arrest. *Higgins* at 1034. Monster Energy drinks also contain l-carnitine. A major side effect of l-carnitine is its propensity to cause seizures in people with a history of seizures.[5]

21. Defendant characterizes Monster Energy drinks as a "dietary supplement" as opposed to a "food," and manufactures its Monster Energy drinks without any restrictions on caffeine content. MSNBC.msn.com, Teen Girl Dies of "Caffeine Toxicity" after Downing 2 Energy Drinks, http://todayhealth.today.com/_news/2012/03/21/10780958-teen-girl-dies-of-caffeine-toxicity-after-downing-2-energy-drinks?lite (last visited November 8, 2012).

22. Monster Energy drinks are sold in retail stores in the District of Columbia and around the country right next to other common beverages such as Coke® and Pepsi®.

23. That Monster Energy drinks are claimed dietary supplements does not relieve Monster of its responsibility to disclose that the mix of ingredients it contains have not been shown to be "completely safe."

24. Under the Dietary Supplement Health and Education Act of 1994 (DSHEA), manufacturers do not need to register their products with FDA nor get FDA approval before producing or selling dietary supplements. However, manufacturers must make sure that product label, and other advertising and marketing information is truthful and not misleading.

25. Nonetheless, Monster Energy misleadingly states that "Monster Energy drinks are completely safe, and we stand behind our products. On an ounce per ounce basis, there is more than double the caffeine in the leading brand of brewed coffee than there is in Monster Energy drinks."

---

[5] http://www.livestrong.com/article/397877-are-monster-energy-drinks-safe/#ixzz2BfR3odqi

26. Monster's statements ignore, and Monster does not disclose, that the ingredients it contains, including high amounts of caffeine combined with L-Carnitine, Guarana, Taurine, and Panax Ginseng, have not been shown to be "completely safe" when used together and that adverse health effects have been shown from such combination.

27. Between 2004-2009, energy drink sales increased 240%. DAWN REPORT at 2. Not surprisingly, this spike in energy drink sales coincided with a reported increase in the number of annual emergency visits due to caffeine overdoses, up from 1,128 in 2005 to 16,055 in 2008 and 13,114 in 2009. *Id.* at 3. Fifty-six percent of these emergency room visits were made by adolescents and young adults aged 12 to 25. *Id.*

28. Today, Monster Energy drinks are part of a dangerous yet still growing array of energy drink products in the marketplace. DAWN REPORT, at 2. In 2011, Monster Energy, just one line of Defendant's vast collection of energy drink products, accounted for $1.3 billion in revenue, commanding 31.5% market share in convenience-store sales, the primary outlet for Monster Energy products. Gary M. Stern, Monster Beverage Courts Young with Unique Ad Tack (Feb. 24, 2012), http://news.investors.com/management-managing-for-success/022412-602190-mnst-stirs-buzz-spikes-sales.htm?p=full (last visit October 29, 2012).

29. Monster Energy can increase the risk of caffeine overdose in both caffeine abstainers and habitual consumers of caffeine for a variety of reasons. Monster's representations regarding the safety of the product results in the purchase of Monster Energy by consumers, including Plaintiff, who may be completely unaware of the amount of caffeine they are ingesting, as well as the potentially dangerous interactions with other ingredients, due to Monster Energy's statements about safety.

7

30.     Monster Energy does nothing to attempt to warn of the severe health risks that can result from over-consumption of Monster Energy drinks, and Monster Energy states that the Monster Energy drinks are "completely safe" preventing consumers from making an informed decision.

31.     Despite the known health risks associated with excessive caffeine consumption, especially in conjunction with other potentially dangerous ingredients, Monster Energy is heavily marketed towards teenagers and young adults, the individuals most susceptible to caffeine-related health effects. *See, e.g.*, DAWN REPORT at 2 ("Although consumed by a range of age groups, energy drinks are marketed to appeal to youth and are consumed by 30 to 50 percent of children, adolescents, and young adults."); PEDIATRICS at 1182 ("Sports and energy drinks are a large and growing beverage industry now marketed to children and adolescents for a variety of uses."); Leah Steinke, *et al.*, *Effect of "Energy Drink" Consumption on Hemodynamic and Electrocardiographic Parameters in Healthy Young Adults*, 43 ANNALS OF PHARMACOTHERAPY, 596, 599 (2009) ("Energy drink marketing often employs nontraditional methods of advertising, such as word-of-mouth campaigns on college campuses, to attract teenagers and young adults.").

32.     With names like "Assault," "Khaos," and "Dub Edition" assigned to variations with the Monster Energy product line, and references in marketing materials to "jungle juice," a known concoction of juices and grain alcohol served at college parties, Defendant's efforts to target teenagers and young adults are readily transparent. Monster Energy, http://www.monsterenergy.com/us/en/products/ (last visited October 31, 2012).

33.     As of October 30, 2012, Monster Energy drink has been cited in five deaths and one non-fatal heart attack, according to reports that the U.S. Food and Drug Administration is investigating the company and the safety of Monster Energy drink. The reports claim that people

had adverse reactions after they consumed Monster Energy Drink, which comes in 24-ounce cans and contains 240 milligrams of caffeine, or seven times the amount of the caffeine in a 12-ounce cola, as well as other potentially dangerous ingredients[6]

34. Despite Defendant's knowledge of the significant risks associated with consumption of Monster Energy drinks, particularly with respect to its target audience of teenagers and adolescents, Defendant's product fails to alert consumers including Plaintiff of the significant risks associated with the consumption of Monster Energy drinks. To the contrary, Monster states that the product is "completely safe" and encourages consumers to "tear into" this product. Indeed, Defendant describes its Monster Energy product as one that consumers "can really pound down," thereby encouraging consumers to speedily and hastily ingest this dangerous product.

35. Though championing the benefits provided by Monster Energy drink and misrepresenting that Monster Energy drinks are "completely safe," Monster fails to disclose to consumers, including Plaintiff, the known health effects of Monster Energy drink, including the risks of cardiac arrhythmia, as well as the fact that Monster Energy drink has not been found to be "completely safe." Defendant withheld and failed to disclose material facts to Plaintiff and the General Public of the District of Columbia.

36. Defendant knew, or should have known, that its statements misrepresented and omitted material facts. Defendant's deceptive advertising had a material effect on purchasers of Monster Energy drink. As a result of Defendant's deceptive advertising, as set forth herein, members of the D.C. Public have been damaged.

---

[6] http://thetandd.com/lifestyles/health-med-fit/fda-five-reported-deaths-with-monster-drink-link/article_bb99795c-2206-11e2-bc66-0019bb2963f4.html

9

## COUNT I
**(Violation of the District of Columbia Consumer Protection Procedures Act)**

37. This Count is brought pursuant to the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.* This Count is alleged against the Defendant on behalf of the General Public of the District of Columbia pursuant to District of Columbia Code § 28-3905(k)(1).

38. D.C. Code § 28-3904 makes it an "unlawful trade practice ... whether or not any consumer is in fact misled, deceived or damaged thereby," to, among other things: (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; ... (d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another; (e) misrepresent as to a material fact which has a tendency to mislead; (f) fail to state a material fact if such failure tends to mislead.

39. In marketing its Monster Energy drink, Monster violated subsection (a) (d), and (e) of the District of Columbia Consumer Procedures Protection Act by, *inter alia*, representing that Monster Energy drinks are "completely safe" when they are not.

40. In marketing its Monster Energy drink, Monster violated subsection (f) of the District of Columbia Consumer Procedures Protection Act by failing to disclose the material facts that 1) Monster Energy drinks have not been found to be "completely safe" and 2) that when combined with other ingredients such as guarana, taurine, and l-carnitine, the effects of large amounts of caffeine are amplified and negative health effects can result. Both of these facts that are material to a reasonable consumer, including Plainitff.

41. Plaintiff, on behalf of the General Public of the District of Columbia, hereby seeks equitable relief in the form of restitution and an injunction preventing Monster from continuing to mislead the DC General Public, and requiring them to disclose the that Monster Energy drinks have not been found to be "completely safe" and that its disparate ingredients can have negative health effects..

42. Plaintiff further seeks treble damages or statutory damages in the amount of $1,500 per violation, whichever is greater, pursuant to D.C. Code § 28-3905(k)(1). Plaintiff and the General Public of the District of Columbia further seek reasonable attorneys' fees and costs plus interest.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against the Defendant, and in favor of Plaintiff and the D.C. Public, and grant the following relief:

a) declaring that Defendant's conduct is in violation of the D.C. Consumer Protection Procedures Act;

b) enjoining Defendant's conduct found to be in violation of the D.C. Consumer Protection Procedures Act;

c) granting Plaintiff and the General Public of the District of Columbia restitution for their purchases as provided for by the CPPA;

d) granting Plaintiff and the General Public of the District of Columbia treble damages or statutory damages in the amount of $1,500 per violation, whichever is greater;

e) granting Plaintiff its costs of prosecuting this action, including attorneys' fees, experts' fees and costs together with interest; and

f) granting such other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: November 13 2012.                    **FINKELSTEIN THOMPSON LLP**

*[signature]*

Mila F. Bartos (Bar # 464227)
Tracy D. Rezvani (Bar # 464293)
Stan M. Doerrer (Bar # 502496)
JAMES PLACE
1077 30th Street, NW, Suite 150
Washington, DC  20007
(202) 337-8000
(202) 337-8090 fax
mbartos@finkelsteinthompson.com
trezvani@finkelsteinthompson.com
sdoerrer@finkelsteinthompson.com


Kevin I Goldberg (DC Bar # 455547)
**Goldberg, Finnegan & Mester LLC**
1010 Wayne Ave., Suite 950
Silver Spring, MD. 20910
(301) 589-2999
(301) 589-2644 fax

*Counsel for Plaintiff*



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Michael S. Zuckman
_____
Plaintiff

vs.

Monster Beverage Corp.
_____
Defendant

Case Number  0008661:1-12

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Mila F. Bartos
_____
Name of Plaintiff's Attorney

1077 30th Street NW Suite 150
_____
Address

Washington DC 20007

202-339-8000
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date  11/13/12

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Dé có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                                                    CASUM.doc



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### 500 Indiana Avenue, N.W., Suite 5000
### Washington, D.C. 20001 Teléfono: (202) 879-1133

_____
                                    Demandante
            contra
                                                Número de Caso: _____
_____
                                    Demandado

## CITATORIO

Al susodicho Demandado:

   Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

   A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                            *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

                                            Por: _____
_____             Subsecretario
Dirección

_____     Fecha _____

_____
Teléfono

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction.    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면 (202) 879-4828 로 전화주십시요       ያማርኛ ተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

   Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

                        Vea al dorso el original en inglés
                        See reverse side for English original

                                                            CASUM.doc

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Michael S. Zuckman

vs

Monster Beverage Corp

Case Number: **0008650-12**

Date: November 13 2012

☐ One of the defendants is being sued in their official capacity.

| Name: (Please Print) Mila F. Bartos | Relationship to Lawsuit |
|---|---|
| Firm Name: Finkelstein Thompson LLP | ☒ Attorney for Plaintiff |
| Telephone No.: 202-337-8000   Six digit Unified Bar No.: 464227 | ☐ Self (Pro Se) <br> ☐ Other: |

TYPE OF CASE:  ☐ Non-Jury       ☐ 6 Person Jury       ☒ 12 Person Jury
Demand: $_____     Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.: _____   Judge: _____   Calendar #: _____

Case No.: _____   Judge: _____   Calendar#: _____

---

NATURE OF SUIT:    (Check One Box Only)

**A. CONTRACTS**                                                 **COLLECTION CASES**

☐ 01 Breach of Contract        ☐ 07 Personal Property           ☐ 14 Under $25,000 Pltf. Grants Consent
☐ 02 Breach of Warranty        ☐ 09 Real Property-Real Estate   ☐ 16 Under $25,000 Consent Denied
☐ 06 Negotiable Instrument     ☐ 12 Specific Performance         ☐ 17 OVER $25,000
☐ 15 Special Education Fees    ☐ 13 Employment Discrimination

**B. PROPERTY TORTS**

☐ 01 Automobile                ☐ 03 Destruction of Private Property   ☐ 05 Trespass
☐ 02 Conversion                ☐ 04 Property Damage                    ☐ 06 Traffic Adjudication
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

**C. PERSONAL TORTS**

☐ 01 Abuse of Process          ☐ 09 Harassment                    ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection   ☐ 10 Invasion of Privacy                Not Malpractice)
☐ 03 Assault and Battery       ☐ 11 Libel and Slander             ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury ☐ 12 Malicious Interference     ☐ 19 Wrongful Eviction
☐ 05 Deceit (Misrepresentation) ☐ 13 Malicious Prosecution        ☐ 20 Friendly Suit
☐ 06 False Accusation          ☐ 14 Malpractice Legal             ☐ 21 Asbestos
☐ 07 False Arrest              ☐ 15 Malpractice Medical (Including Wrongful Death) ☐ 22 Toxic/Mass Torts
☒ 08 Fraud                     ☐ 16 Negligence- (Not Automobile,  ☐ 23 Tobacco
                                     Not Malpractice)              ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE ☐ IF USED

CV-496/Aug 12

# Information Sheet, Continued

**C. OTHERS**

I.
- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 04 Condemnation (Emin. Domain)
- ☐ 05 Ejectment
- ☐ 07 Insurance/Subrogation Under $25,000 Pltf. Grants Consent
- ☐ 08 Quiet Title
- ☐ 09 Special Writ/Warrants (DC Code § 11-941)
- ☐ 10 T.R.O./ Injunction
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment
- ☐ 17 Merit Personnel Act (OEA) (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify, Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 25 Liens: Tax/Water Consent Granted
- ☐ 26 Insurance/ Subrogation Under $25,000 Consent Denied
- ☐ 27 Insurance/ Subrogation Over $25,000
- ☐ 28 Motion to Confirm Arbitration Award (Collection Cases Only)
- ☐ 26 Merit Personnel Act (OHR)
- ☐ 30 Liens: Tax/ Water Consent Denied
- ☐ 31 Housing Code Regulations

II.
- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage Certificate
- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as Judgment [ D.C. Code § 2-1802.03 (h) or 32-1519 (a)]
- ☐ 20 Master Meter (D.C. Code § 42-3301, et seq.)
- ☐ 21 Petition for Subpoena [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a) (1) (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

_____
Attorney's Signature

11/13/12
Date



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

MICHAEL S. ZUCKMAN
Vs.                                   C.A. No.      2012 CA 008653 B
MONSTER BEVERAGE CORP.

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge GREGORY E JACKSON
Date: November 13, 2012
Initial Conference: 9:30 am, Friday, February 15, 2013
Location: Courtroom 100
          500 Indiana Avenue N.W.
          WASHINGTON, DC 20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc