UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL ZUCKMAN, on behalf of himself and the General Public of the District of Columbia,<br><br>    Plaintiff,<br><br>    v.<br><br>MONSTER BEVERAGE CORP.,<br><br>    Defendant. | Civil Action No.  12-1978 (JDB) |

## MEMORANDUM OPINION

Plaintiff Michael S. Zuckman, acting on behalf of himself and the general public, filed this action in District of Columbia Superior Court on November 13, 2012. Zuckman alleges that Monster Beverage Corporation ("Monster") engaged in unlawful trade practices in violation of the District of Columbia Consumer Protection Procedures Act ("DCCPPA") by failing to disclose and by misrepresenting the adverse health effects of Monster Energy drinks. Monster removed the action, arguing that this Court has diversity jurisdiction over the matter pursuant to 28 U.S.C. § 1332(a), or, alternatively, that the Court has jurisdiction under the Class Action Fairness Act. Zuckman now moves to remand the action to the Superior Court of the District of Columbia for lack of subject-matter jurisdiction. For the reasons set forth below, the Court will grant Zuckman's motion and will remand the action.

## BACKGROUND

Zuckman brings this one-count action pursuant to the DCCPPA's private attorney general provision, under which "[a]n individual may, on behalf of that individual, or on behalf of both

the individual and the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District." D.C. Code § 28-3905(k)(1)(B). Zuckman alleges that Monster violated the statute by misrepresenting that Monster Energy drinks are "completely safe," and by failing to disclose the material adverse health effects potentially caused by the drinks' particular ingredients. See Compl. [Docket Entry 1-1] ¶¶ 39, 40 (Nov. 13, 2012). Zuckman claims that he "has viewed advertising for[] and regularly purchased" Monster Energy drinks in the District of Columbia, and that he "has consumed up to two cans of Monster Energy drink in one day on numerous occasions." See id. ¶ 1. On behalf of himself and the general public of the District of Columbia, Zuckman seeks relief in the form of treble or statutory damages in the amount of $1,500 per violation; restitution for each consumer of Monster Energy drinks; an injunction requiring Monster to disclose that the drinks have not been found "completely safe" and are capable of causing negative health effects; and reasonable attorney fees and costs. See id. ¶¶ 41-42.

Monster filed an opposition to the motion for remand, and Zuckman filed a reply. Pursuant to the Court's Order, Zuckman and his counsel also provided affidavits containing additional information regarding the amount in controversy. Both parties filed supplemental briefing addressing this information.

## STANDARD OF REVIEW

An action originally filed in state court "may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending," when it falls within the federal court's original jurisdiction. 28 U.S.C. § 1441(a). Because of the significant federalism concerns involved, this Court strictly construes the scope of its removal jurisdiction. See Shamrock Oil & Gas Corp. v. Sheets, 313

U.S. 100, 107-09 (1941); see also Bhagwanani v. Howard Univ., 355 F. Supp. 2d 294, 297 (D.D.C. 2005); Johnson-Brown v. 2200 M Street LLC, 257 F. Supp. 2d 175, 177 (D.D.C. 2003). After removal of an action from state court, the party seeking to remain in federal court—Monster here—bears the burden of establishing that federal jurisdiction exists. See Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921); Bhagwanani, 355 F. Supp. 2d at 297; In re Tobacco/Gov'tal Health Care Costs Litig., 100 F. Supp. 2d 31, 35 (D.D.C. 2000). "When it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court must remand the case . . . ." Republic of Venez. v. Philip Morris Inc., 287 F.3d 192, 196 (D.C. Cir. 2002); see also Bhagwanani, 355 F. Supp. 2d at 297. "[T]he court must resolve any ambiguities concerning the propriety of removal in favor of remand." Johnson-Brown, 257 F. Supp. 2d at 177.

## DISCUSSION

### I. Diversity Jurisdiction

A federal court has diversity jurisdiction over an action "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). The parties agree, and the Court finds, that Zuckman, a Maryland citizen, and Monster, a Delaware corporation principally based in California, are completely diverse. The parties dispute, however, whether the amount in controversy is met. In addressing this question, the Court will consider Zuckman's claims for various types of relief: statutory damages, attorney fees, an injunction, and restitution. The Court will assume that the amounts sought should be added together. See, e.g., Breakman v. AOL LLC, 545 F. Supp. 2d 96, 108 (D.D.C. 2008) (discussing the combined monetary value of plaintiff's requests for relief to determine the amount in controversy). If the amount is at or below $75,000, the action lies outside the Court's diversity jurisdiction.

### A. Statutory Damages

Zuckman seeks to recover $1,500 on behalf of himself and the general public for each statutory violation under the DCCPPA. The Supreme Court has long held that "the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." See Snyder v. Harris, 394 U.S. 332, 335 (1969). Hence, only the damages to which Zuckman would be personally entitled—rather than those on behalf of the public—will count toward satisfying the $75,000 jurisdictional threshold. See Breakman, 545 F. Supp. 2d at 103-04.

In his complaint, Zuckman declines to specify how many alleged statutory violations occurred, merely stating that he "regularly purchased" Monster Energy drinks in the District of Columbia. See Compl. ¶ 1. Based on these allegations, Monster contends that it is more likely than not that Zuckman purchased and consumed more than 50 cans, which, at $1,500 per violation, would put him above the $75,000 threshold for federal jurisdiction. See Def.'s Opp'n to Pl.'s Mot. for Remand [Docket Entry 10] at 5 (Jan. 28, 2013) ("Def.'s Opp'n"). Monster further argues that the alleged "violations" include not simply purchases of cans, but also instances of viewing allegedly misleading advertising, and that counting each such instance as a "violation" makes it even more likely that the total number of alleged "violations" exceeds 50. See id.

Zuckman responds that Monster mischaracterizes his claim, and that he is only asserting as "violations" his purchases. See Reply in Supp. of Pl.'s Mot. for Remand [Docket Entry 11] at 3-4 (Feb. 8, 2013) ("Pl.'s Reply"). As to the number of cans at issue, Zuckman submitted an affidavit in response to the Court's Order, attesting that he purchased 15 to 20 cans in the District of Columbia. See Aff. of Michael Zuckman [Docket Entry 13] ¶ 6 (May 30, 2013). Responding

4

to the Order's request that Zuckman specify the total number of cans he purchased "during the relevant period," see Order [Docket Entry 12] at 1 (May 9, 2013), Zuckman also acknowledged that he purchased many cans in Maryland, for an estimated total of 100 to 120 cans. See Zuckman Aff. ¶ 5. Finally, responding to the Order's request that he attest to "the maximum number of violations supporting statutory damages that plaintiff intends to assert on his own behalf," see Order at 1, Zuckman stated that "I intend to prosecute any individual claims I have for purchases made in Washington, DC." Zuckman Aff. ¶ 9. In his supplemental brief, Zuckman again makes clear that his complaint only asserts claims for cans purchased in the District. See Supplemental Br. in Supp. of Pl.'s Mot. for Remand [Docket Entry 16] at 2 & n.2 (June 10, 2013) ("Pl.'s Supplemental Br.") ("Plaintiff does not assert CPPA claims for purchases made outside of Washington, DC.").

If the only violations Zuckman asserts are based on cans he purchased in the District of Columbia, the damages sought for statutory violations fall well short of the amount-in-controversy requirement. The parties' dispute thus centers on the proper reading of Zuckman's complaint and subsequent representations. Monster contends that, in addition to the advertising viewed, all of the cans, including those purchased in Maryland, must count for assessing the amount in controversy. See Def.'s Supplemental Br. in Opp'n to Pl.'s Mot. for Remand [Docket Entry 15] at 2-5 (June 10, 2013) ("Def.'s Supplemental Br.").

Zuckman's complaint itself is not clear as to the "violations" he asserts as a basis for statutory damages. It is fairly read, however, to bring an action based only on cans he purchased in the District. For example, Zuckman repeatedly makes reference to his purchases "in the District of Columbia," and he omits specific mention of cans purchased in Maryland. See Compl. ¶ 1 ("[Zuckman] has viewed advertising for, and regularly purchased Monster Energy drinks

manufactured by Defendant, in the District of Columbia."); id. ¶ 7 ("Mr. Zuckman has viewed advertising for, and regularly purchased Monster Energy drinks in the past in the District of Columbia."). Moreover, Zuckman also describes his claim in this manner in the motion for remand, characterizing the complaint as requesting various types of relief for Monster Energy drinks purchased "in the District of Columbia."[1] See Pl.'s Mot. for Remand for Lack of Subject Matter Jurisdiction [Docket Entry 9] at 2 (Jan. 9, 2013) ("Pl.'s Mot. for Remand"). The complaint is also ambiguous as to whether the advertising viewed forms a separate violation. Although the complaint discusses Monster's allegedly misleading advertisements, Zuckman never expressly indicates that he interprets viewing these advertisements as violations that would independently support statutory damages. See Compl. ¶ 42 (asking for statutory damages "per violation" without specifying what a violation is); id. at 11 (asking for relief based on "Defendant's conduct").

To the extent there remains doubt about the contours of Zuckman's claims, his representations in the affidavits and briefing resolve the question. Counting the Maryland cans would put the amount in controversy over $75,000. Zuckman, however, stipulates (in response to the Court's question about "maximum" violations) that he "intend[s] to prosecute any individual claims [he has] for purchases made in Washington, DC," see Zuckman Aff. ¶ 9, and that he "does not assert CPPA claims for purchases made outside of Washington, DC." See Pl.'s Supplemental Br. at 2 n.2.[2] He also stipulates that he does not seek statutory damages based on instances of advertising viewed. See Pl.'s Reply at 3 (Zuckman stating that he "never made" the

---

[1] It is not surprising that Zuckman would circumscribe his complaint to include only those cans purchased in the District, for it is far from clear that the DCCPPA would allow recovery for cans purchased in Maryland. See Nelson v. Nationwide Mortg. Corp., 659 F. Supp. 611, 616-17 (D.D.C. 1987) ("[T]he Court will not presume that the [DCCPPA] was intended to apply to every commercial transaction involving a District of Columbia resident, wherever and with whomever that transaction occurs.").

[2] Zuckman further stipulates that his claims only relate to his 3 to 5 purchases of the original Monster Energy drink flavor, see id. at 2, although this further limitation is not critical to the jurisdictional question.

"fanciful argument that [his] case includes statutory damages for each time he 'viewed advertising in this District' and that such 'views' should each be considered a separate violation").

Resisting this conclusion, Monster invokes St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 (1938), to argue that Zuckman cannot now make representations to reduce the amount in controversy below the jurisdictional minimum. See Def.'s Supplemental Br. at 2 & n.2. But St. Paul Mercury turned on the fact that the complaint was facially clear in requesting an amount of damages above the jurisdictional minimum—the complaint there expressly sought an amount greater than required under the then-governing statute, see 303 U.S. at 284, and the Supreme Court held that "a subsequent amendment, reducing the sum claimed to substantially less than that amount," did not warrant remand to state court. See id.; see also id. at 296 (holding that "[o]n the face of the pleadings petitioner was entitled to invoke the jurisdiction of the federal court and a reduction of the amount claimed after removal[] did not take away that privilege"). The Supreme Court reasoned that a subsequent amendment to the complaint cannot defeat jurisdiction because at the time of removal the jurisdictional requirement was satisfied. See id. at 289-90 ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."); see also id. at 291 ("[T]he status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal, since the defendant must file his petition before the time for answer or forever lose his right to remove.").

But this timing problem does not arise when the complaint is initially ambiguous, and plaintiff's stipulations merely clarify what the complaint has asserted from the outset. See Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 223 (3d Cir. 1999) ("Although a court

7

can make an independent appraisal of the reasonable value of the claim . . . it might also consider a stipulation as <u>clarifying</u> rather than <u>amending</u> an original pleading." (emphasis added) (citation and internal quotation marks omitted)), <u>abrogated on other grounds by</u> <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546 (2005); <u>ANPAC v. Dow Quimica de Colombia S.A.</u>, 988 F.2d 559, 565 (5th Cir. 1993) ("Although . . . a plaintiff may not defeat removal by subsequently <u>changing</u> his damage request . . . in this case the affidavits clarify a petition that previously left the jurisdictional question ambiguous." (citing <u>St. Paul Mercury</u>, 303 U.S. at 292)), <u>abrogated on other grounds by</u> <u>Marathon Oil Co. v. Ruhrgas</u>, 145 F.3d 211 (5th Cir. 1998), <u>rev'd</u>, 526 U.S. 574 (1999). In instances where the complaint is ambiguous, the plaintiff—who is, after all, the master of his complaint—may hence clarify the amount in controversy with affidavits or stipulations. See <u>Standard Fire Ins. Co. v. Knowles</u>, 133 S. Ct. 1345, 1350 (2013) ("[F]ederal courts permit individual plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court, by stipulating to amounts at issue that fall below the federal jurisdictional requirement."). Zuckman's stipulations here clarify his ambiguous complaint.

To be sure, to be effective, a stipulation "must be binding." <u>Id.</u> at 1348; <u>see also</u> 14AA Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 3702.1, at 335 (4th ed. 2011) (federal court can insist on a "binding affidavit or stipulation that the plaintiff will continue to claim less than the jurisdictional amount" as condition for remand). That requirement, too, is satisfied. Here, Zuckman's affidavits, along with the stipulations in his supplemental brief, will be binding under the doctrine of judicial estoppel: he has represented that he is not seeking statutory damages based on cans purchased in Maryland or based on advertisements viewed, and this representation is necessary to the Court's present decision. See <u>Moses v. Howard Univ.</u>

8

Hosp., 606 F.3d 789, 798 (D.C. Cir. 2010) (setting forth requirements for applying judicial estoppel). Moreover, all that is at issue here are fees that can be ascribed to Zuckman's individual claims. Accordingly, Zuckman's stipulations relate only to these claims, and there is no doubt that he has the power to bind himself in this way. See Standard Fire Ins. Co., 133 S. Ct. at 1350.

Because Zuckman has made clear, in binding stipulations in his briefs and affidavits, that he is asserting individual claims based only on cans of Monster Energy he purchased in the District of Columbia, he will be limited to claims based on these purchases in future proceedings. The purchases in the District are hence the only ones relevant for the calculation of statutory damages. Zuckman attests that he purchased "approximately 3 to 5 cans of the original flavor [of] Monster Energy Drink," and "between 15 and 20 cans total." See Zuckman Aff. ¶¶ 6, 8. Taking the largest of these numbers, if Zuckman purchased 20 cans, at $1,500 per violation, the amount put into controversy by his request for statutory damages is $30,000.

### B. Attorney Fees

Zuckman also requests recovery of reasonable attorney fees under the DCCPPA. See Compl. ¶ 42. Monster argues that the fees in this case will themselves exceed the $75,000 threshold for establishing diversity jurisdiction. See Def.'s Opp'n at 7. In an affidavit, Zuckman's lawyers attest that they have spent approximately 197 hours on the case through May 30, 2013, and they forecast spending "at least 1,750 hours" on the case if it proceeds to trial. See Aff. of Mila F. Bartos [Docket Entry 14] ¶¶ 6-7 (May 30, 2013). Given this information and his attorneys' billing rates, Zuckman acknowledges that if he succeeds at trial the aggregate attorney fees recoverable would exceed $75,000. See Pl.'s Supplemental Br. at 2-3.

Attorney fees are part of the amount in controversy if they are provided for by statute or contract. See Mo. State Life Ins. Co. v. Jones, 290 U.S. 199, 202 (1933); Breakman, 545 F. Supp. 2d at 107. Since the DCCPPA allows for recovery of reasonable attorney fees, see D.C. Code § 28-3905(k)(2)(B), Zuckman's fees are appropriately considered part of the amount in controversy. As he correctly argues, however, his fees cannot be aggregated with those of the general public in order to satisfy the $75,000 threshold. See Kessler v. Nat'l Enters., Inc., 347 F.3d 1076, 1080 (8th Cir. 2003) (noting that "fees cannot be aggregated to meet the amount-in-controversy requirement" (internal quotation marks omitted)); Nat'l Consumers League v. Gen. Mills, Inc., 680 F. Supp. 2d 132, 141 (D.D.C. 2010) (explaining that "aggregation of attorneys' fees is not appropriate in a CPPA case"). Rather, the Court may consider only Zuckman's share of the total fees when calculating the amount in controversy. This, in turn, raises the question of how to determine Zuckman's share—i.e., what percentage of the attorney fees can be attributed to claims Zuckman brings on behalf of himself.

Zuckman argues that the fees should be apportioned between him and the general public on a pro rata basis, and that the total fees (calculated by multiplying the hours worked by the hourly rates) should be divided by all the individuals who would benefit from the judgment. See Pl.'s Mot. for Remand at 7. This approach may underestimate the portion of fees properly attributed to Zuckman in his role as the initial plaintiff—Zuckman, after all, likely would have still chosen to bring this suit even if he could assert only individual claims, and the work required of his attorneys would be substantially more than the pro rata portion of the total hourly fees. A preferable approach is to consider the attorney fees that Zuckman's individual claims support by calculating a reasonable contingency fee—say, 33%, see City of Riverside v. Rivera, 477 U.S. 561, 573 (1986)—that would accompany a full judgment in his favor. Such an approach is

10

particularly fitting here because Zuckman's lawyers are working on a contingency fee basis, and hence any recoverable attorney fees are inherently connected to the monetary value of the claims. Allocating the fees in this manner also strikes a proper balance between ensuring that Zuckman's expenditures on attorney fees are not undervalued or diluted, and preventing the fees from driving the amount in controversy, a concern that this Court expressed in Breakman. See 545 F. Supp. 2d at 107 ("[T]he Court is not entirely comfortable with the premise that an action should be retained in federal court where satisfaction of the amount in controversy requirement depends upon a lump sum award of attorneys' fees.").

Adopting this approach, if Zuckman recovers the full $30,000 in statutory damages for the 20 cans he purchased in the District, his attorney fees would total $10,000.

## C. Injunctive Relief

In addition to statutory damages and attorney fees, Zuckman also seeks an "injunction preventing Monster from continuing to mislead the DC General Public, and requiring them to disclose [] that Monster Energy drinks have not been found to be 'completely safe' and that its disparate ingredients can have negative health effects." See Compl. ¶ 41. Monster maintains that if it were ordered to comply with this request and state that its products are unsafe, it would suffer more than $75,000 in lost revenue. See Def.'s Opp'n at 11. Consequently, Monster contends that Zuckman's claims for injunctive relief satisfy the amount-in-controversy requirement. See id.

The parties dispute whether the cost of relief should be measured from the perspective of the plaintiff or defendant. Whatever perspective is used, they also disagree as to how the cost should be apportioned here given the claims on behalf of the general public. The Court need not resolve these issues, however, because Monster's claims about the costs are too speculative to

serve as the basis for determining the amount in controversy. Courts have found that general assertions that the cost of injunctive relief would exceed $75,000 are too speculative to establish diversity jurisdiction. See Nat'l Consumers League, 680 F. Supp. 2d at 140 (holding that defendant's claim that the cost of injunctive relief would exceed $75,000 was "too speculative"); Wexler v. United Air Lines, Inc., 496 F. Supp. 2d 150, 154 (D.D.C. 2007) (finding defendant's claim that "the total cost 'is certain' to exceed $75,000" insufficient to establish jurisdiction).

Here, Monster merely asserts that complying with the injunction would cause it to "suffer a decrease in revenue in an amount greater than $75,000." See Def.'s Opp'n at 14. It argues that "[t]his conclusion follows logically from the fact that [defendant] sold more than $2,000,000 of Monster Energy products in the District of Columbia" in the three years before the complaint was filed. See id. As an initial matter, and as Zuckman points out, courts have held that it is improper to consider a decrease in future revenue as a cost of complying with an injunction. See, e.g., Snow v. Ford Motor Co., 561 F.2d 787, 790 (9th Cir. 1977) (holding that injunctive relief does not meet the amount in controversy when the "only reason the injunction is worth more than [the jurisdictional minimum]" is that it would affect defendant's future sales). As a result, Monster's contention that complying with the injunction will cause it to suffer a "future decrease in sales of more than $75,000" will not suffice to establish jurisdiction. See Def.'s Opp'n at 15.

Even if future lost profits were considered, however, Monster's claims about these costs are still too speculative to satisfy the amount-in-controversy requirement. While it argues that it need not supply specific evidence showing the costs of relief, see id. at 14-15, the case law indicates otherwise. In Wexler, Judge Kessler held that the defendant's costs were too speculative when it offered a list of obligations it would have to fulfill if the injunction were granted, but "provide[d] no evidentiary support for the cost of each obligation," merely asserting

12

that the total would exceed $75,000. See 496 F. Supp. 2d at 154. And in National Consumers League, Judge Kennedy determined that the defendant's estimated costs of injunctive relief proved too speculative where it asserted that "'to the extent that relief requires the removal of boxes of store shelves, the expense to [the defendant] would exceed $75,000.'" 680 F. Supp. 2d at 140. In the instant case, beyond making general assertions about a decrease in revenue, Monster provides no evidence about how the disclaimer Zuckman seeks would affect sales, how consumers and competitors would respond, how it would alter the price of its product, or how these losses would translate into lost profits. With so little information, the Court has no basis to assess Monster's expected losses. Monster's general assertions are thus too speculative to establish the cost of injunctive relief, and the Court will hence not consider any such costs.

### D. Restitution

Zuckman also seeks restitution on behalf of himself and the general public for their purchases of Monster Energy drinks. See Compl. at 11; Pl.'s Mot. for Remand at 13. Restitution claims, like claims for statutory damages or attorney fees, generally cannot be aggregated for purposes of satisfying the amount-in-controversy requirement. See Snyder, 394 U.S. at 335 (holding that the "separate and distinct claims of two or more plaintiffs cannot be aggregated" to establish jurisdiction); see also Georgiades v. Martin-Trigona, 729 F.2d 831, 833 (D.C. Cir. 1984) ("Separate and distinct claims, regardless of whether they share a community of interest or originate in a single transaction or event, may not be aggregated . . . ."). However, there is an exception to this rule in cases where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest," Snyder, 394 U.S. at 335, such as when claimants seek disgorgement of money obtained through unlawful trade practices. See Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, 48 F. Supp. 2d 37, 40-41 (D.D.C. 1999). In

these instances, aggregation of claims is permissible. See id. Hence, the key issue here is whether Zuckman's request for restitution is effectively a claim of disgorgement.

In an action for disgorgement, members of the class seek to remedy a defendant's unjust enrichment from illegal practices, requesting the return of "a certain sum of money . . . because it would be inequitable for defendants to keep this sum." See id. at 40 (internal quotation marks omitted). Rather than redress an individual plaintiff's specific injury, disgorgement claims seek to hold defendants generally "liable for a refund of all moneys acquired" as a result of their illegal activities. See Williams v. Purdue Pharma Co., No. 02-0556, 2003 WL 24259557, at *5 (D.D.C. Feb. 27, 2003) (internal quotation marks omitted). Because of their indivisible nature, claims for disgorgement are integrated claims that can be aggregated in order to determine the amount in controversy. See Aetna, 48 F. Supp. 2d at 40-41. Where "separate and distinct claims are asserted on behalf of a number of individuals," by contrast, the claims are not properly aggregated. See Breakman, 545 F. Supp. 2d at 103. In these instances, the plaintiff seeks "damages for individual consumers, not disgorgement," which would "establish a joint or common right in a common fund." See Reigner v. Ingersoll-Rand Co., 461 F. Supp. 2d 1, 2 (D.D.C. 2004); see also Breakman, 545 F. Supp. 2d at 104. Aggregating restitution claims is therefore improper.

Here, Zuckman requests that the Court "grant[] [him] and the General Public of the District of Columbia restitution for their purchases as provided for by the CPPA." See Compl. at 11. He seeks restitution for the amount paid by, and owed to, each D.C. purchaser of Monster Energy drinks, rather than a lump, undivided sum, possessed by Monster. Citing Williams and Aetna, Monster responds that, like the claims in those cases, Zuckman's request for restitution seeks a common and undivided sum and thus possesses the defining characteristics of an

aggregable disgorgement claim: his restitution request "will not turn on the number of purchasers of Monster Energy, the number of purchases by any one consumer, or consumers' decisions to collect or not to collect from the restitutionary sum," but will "depend[] solely on the volume of sales of Monster Energy products" in the District. See Def.'s Opp'n at 16. This is an inaccurate characterization of Zuckman's claim. He is asserting "separate and distinct claims" on behalf of himself and the general public for "their purchases" of Monster Energy. See Compl. at 11. Rather than seeking the return of all Monster's allegedly unlawful profits—a fixed sum of money to be disgorged regardless of the number of plaintiffs—Zuckman requests specific and individualized relief based on each can purchased by the individual plaintiffs represented in this action.[3] Contrary to Monster's arguments, then, the amount of the restitution claim will depend on the number of purchasers of Monster Energy, and how many cans each of them bought. Zuckman's claim is therefore unlike those in Aetna and Williams, in which members of the class sought to remedy the defendant's unjust enrichment, seeking the return of a fixed sum of money obtained through allegedly illicit means. Hence, the restitution claims here cannot be aggregated, and only Zuckman's individual claim counts toward the amount in controversy.

Assuming that each can of Monster Energy cost $3, see Pl.'s Mot. for Remand at 2, and that Zuckman purchased 20 cans in the District of Columbia, his restitution claim amounts to $60. Combining the monetary value of this claim with the $30,000 in statutory damages and $10,000 in attorney fees, Zuckman's requests for relief add up to $40,060—well below the $75,000 jurisdictional minimum. This Court thus does not have diversity jurisdiction over this action.

---

[3] To be sure, the sum of the purchases will, in fact, equal Monster's total sales in the District of Columbia because all individuals who purchased cans in the District are included in Zuckman's claims. But that does not mean that the total sales figure is driving the amount of the request. It is not. Zuckman's claims are clearly framed from the perspective of the consumers and dependent on the money they expended. Moreover, the total sales figure is meaningless as a starting point—unlike a request for all of an entity's profits, the total sales figure says nothing about illicit gains from an allegedly improper transaction.

## II.    Class Action Fairness Act

Monster also contends that this case lies within the Court's subject-matter jurisdiction pursuant to the Class Action Fairness Act. See Def.'s Opp'n at 19. Zuckman counters that because he filed this case as a representative action under the DCCPPA, and because he did not attempt to comply with the D.C. Superior Court's rules for filing class action lawsuits, his case is not a removable class action under the Act. See Pl.'s Mot. for Remand at 15. The Court agrees.

As this Court has previously recognized, "[t]he DCCPPA specifically authorizes a private attorney general suit without any reference to class action requirements." Breakman, 545 F. Supp. 2d at 101. Because the plaintiff in that case did not attempt to comply with Rule 23 of the D.C. Superior Court Rules of Civil Procedure, did not seek class action certification, and specifically stated that he was bringing his case as a representative action under the DCCPPA, the Court concluded that the action was a "separate and distinct procedural vehicle from a class action." See id. A similar analysis applies here. Zuckman brought his case as a representative action under the private attorney general provision of the DCCPPA, he did not refer to his claim as a class action, and did not seek to comply with any of the D.C. Superior Court's class action rules. See Pl.'s Mot. for Remand at 15 ("As is evident from the Complaint, this case is not a class action . . . ."). Hence, his case does not qualify as a class action under the Class Action Fairness Act, and the Court cannot exercise jurisdiction pursuant to that statute.

Contending that the Court should deviate from the analysis in Breakman, Monster maintains that a recent D.C. Superior Court case alters the landscape. That case held that DCCPPA claims for damages on behalf of the public could not be brought "without invoking and complying with the requirements for class actions set forth in Rule 23 of the Superior Court Rules of Civil Procedure." Margolis v. U-Haul Int'l, Inc., No. 2007 CA 005245 B, 2009 WL

5788369, at *1-2 (D.C. Super. Ct. Dec. 17, 2009).[4] Because the complaint in Margolis "was not formally framed as a class action and did not include the class action allegations required by Rule 23," id. at *3, the D.C. Superior Court dismissed Margolis's claims "for money damages under the CPPA on behalf of third parties," but allowed his individual claims for damages and claims for injunctive relief on behalf of the public to proceed. See id. at *2. Relying on this holding, Monster contends that this case is a putative class action under CAFA because "it must be litigated pursuant to Rule 23 of the Federal Rules of Civil Procedure." See Def.'s Opp'n at 20.

But how this case "must" be litigated is a merits question to be assessed at the motion to dismiss stage. What matters for purposes of jurisdiction, by contrast, is whether this was an "action filed under rule 23" or a state equivalent—i.e., how the action was actually filed, rather than how it should have been filed to state a claim for all the relief sought. See 28 U.S.C § 1332(d)(1)(B) (emphasis added); see also Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 214 (2d Cir. 2013) ("To qualify as a 'class action' within the meaning of CAFA, the action must be filed under a statute or rule that is both similar to Rule 23 and authorizes the action to proceed 'as a class action.'"). As discussed above, it is evident here that Zuckman did not, in fact, file the action under Rule 23 of the D.C. Superior Court Rules of Civil Procedure or Rule 23 of the Federal Rules of Civil Procedure; the complaint is not labeled a class action, nor does it seek certification of any class or allege that Rule 23's requirements, such as numerosity and typicality, have been met. See Fed. R. Civ. P. 23; D.C. Sup. Ct. R. 23. Nor does the DCCPPA qualify as a statute similar to Rule 23 that itself carries the requisite procedural safeguards. Indeed, such an argument contradicts the very holding of Margolis—if the DCCPPA itself provided class action

---

[4] The Westlaw version of the case is not paginated; the Court will use the pagination on the printed decision, which Monster has included as Exhibit D to its Notice of Removal.

safeguards, the Margolis claim for money damages on behalf of third parties should have been permitted to proceed. Instead, it was dismissed. See Margolis, 2009 WL 5788369, at *8.

Perhaps—if other D.C. local courts follow the Margolis decision—Zuckman's damages claim on behalf of the general public will be dismissed because he did not file his action under Rule 23. But the Court cannot somehow convert Zuckman's complaint into a class action on the assumption that, faced with possible dismissal of the damages claim on behalf of the general public, he would choose to file this case under Rule 23. "[C]lass actions are permissive, not mandatory," Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 291 (2008), and it is Zuckman's strategic choice, in light of the Margolis decision, its precedential weight, and his other claims, to proceed without invoking Rule 23. The Court will not second-guess such a choice (nor is it evident what authority it would have to do so). Because Zuckman did not file this action as a class action, his claim falls outside CAFA pursuant to its plain text.[5]

## CONCLUSION

Because there is no diversity jurisdiction over this case, and because it does not fall under the Class Action Fairness Act, the Court will grant Zuckman's motion for remand for lack of subject-matter jurisdiction.

/s/
JOHN D. BATES
United States District Judge

Dated:  August 6, 2013

---

[5] Where an action is not filed as a class action, it may still be removable under CAFA if it satisfies the requirements of a "mass action." See 28 U.S.C. § 1332(d)(11)(A). But Monster expressly states that it did not seek removal on this basis, see Def.'s Opp'n at 23, and it does not attempt to show that the "mass action" prerequisites are met. Moreover, a DCCPPA claim like Zuckman's would likely fall into an exception to the "mass action" provision that applies where "all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class)." See 28 U.S.C. § 1332(d)(11)(B)(ii)(III); see also Breakman, 545 F. Supp. 2d at 101.